UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WILLIAM J. KIRBY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:14-cv-00252-WTL-MJD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | | |

## REPORT AND RECOMMENDATION

William Kirby, Jr., ("Plaintiff") requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his applications

for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental

Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C.

§§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge

recommends that the decision of the Commissioner be **AFFIRMED.**

### Procedural History and Background

Plaintiff filed the current applications for DIB and SSI on September 16, 2011, alleging

an onset of disability on July 1, 2010. [R. at 16.] He was 39 years old at the time of the alleged

onset, and he had past work experience as a printing press operator. [R. at 28.] He alleged

disability due to carpal tunnel syndrome, migraines, a knee impairment, digestive disorders,

depression, and obsessive compulsive disorder. [R. at 18-19.][1]

---

[1] Plaintiff recited the relevant factual and medical background in more detail in his opening brief. [*See* Dkt. 16.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 19.] Because these facts involve Plaintiff's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and will articulate only specific facts as needed herein.

Plaintiff's applications were denied initially on February 9, 2012 and on reconsideration on May 3, 2012. [R. at 16.] Plaintiff requested a hearing, which occurred via videoconference before Administrative Law Judge ("ALJ") William Sampson on May 10, 2013. [*Id.*] Plaintiff appeared and testified before the ALJ. [R. a 36.] Also present were Plaintiff's attorney, Nicholas Sauter, and a vocational expert, Stephanie Archer. [*Id.*] The ALJ determined that Plaintiff had not been under a disability at any time from the alleged onset date through the date of the ALJ's June 14, 2013 decision. [R. at 29.] The Appeals Council denied Plaintiff's request for review on July 31, 2014, [R. at 1-7], rendering the ALJ's decision final. Plaintiff filed his complaint in this Court on August 18, 2014. [Dkt. 1.]

## **Applicable Standard**

To be eligible for SSI or DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. . The Court, that is, "must be able to trace the ALJ's path of reasoning" from the

evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

<u>**The ALJ's Decision**</u>

The ALJ first determined that Plaintiff met the insured status requirements of the Act through December 31, 2016. [R. at 18.] He then proceeded through the five-step sequential evaluation. At step one, he found that Plaintiff had not engaged in substantial gainful activity ("SGA") since July 1, 2010, the alleged onset date. [*Id.*] At step two, he found that Plaintiff suffered from the following severe impairments: "degenerative disc disease, carpal tunnel syndrome on the right, migraines, knee impairment, obesity, gastroesophageal reflux disease, peptic ulcer disease, Barrett's esophagus, major depressive disorder and obsessive compulsive disorder." [R. at 18-19.]

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [R. at 19.] He specifically considered and rejected Listing 1.02 (major dysfunction of a joint) and Listing 1.04 (disorders of the spine) to account for Plaintiff's musculoskeletal impairments. [R. at 19-20.] He also stated that he considered the effect of Plaintiff's obesity in accordance with SSR 02-1p. [R. at 20.]

The ALJ then considered Plaintiff's mental impairments under Listings 12.04 and 12.06. [*Id.*] In doing so, he employed the SSA's special technique for evaluation of mental impairments. He thus considered the "Paragraph B" criteria and found that Plaintiff had "moderate" restrictions in activities of daily living; "moderate" difficulties in social functioning; and "moderate" difficulties maintaining concentration, persistence, or pace. [R. at 20-21.] He also found that Plaintiff had no episodes of decompensation of extended duration, [R. at 21], and he concluded that the Paragraph B criteria were not satisfied. [*Id.*] The ALJ then turned to the

"Paragraph C" criteria, but he found that the record contained insufficient evidence to establish that these criteria were satisfied. [R. at 21-22.]

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). He concluded that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch and crawl. The claimant can frequently but not constantly use his bilateral upper extremities for handling and fingering. The claimant can frequently but not constantly use foot controls. The claimant can perform simple, routine and repetitive tasks. The claimant can have occasional interaction with supervisors and coworkers, but should have no interaction with the public.

[R. at 22.] At step four, the ALJ concluded that this RFC did not allow Plaintiff to perform his past relevant work. [R. at 28.] The ALJ thus proceeded to step five and received testimony from the vocational expert indicating that someone of Plaintiff's age, education, experience, and RFC would be able to perform jobs such as assembler, cleaner, and machine feeder. [R. at 29.] Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [*Id.*]

## Discussion

Plaintiff contends the ALJ erred in three ways. He first argues that the ALJ failed to give adequate weight to the opinions of Plaintiff's treating physicians. [Dkt. 16 at 10.] Plaintiff then contends that the ALJ erred at step three by concluding that Plaintiff's impairments did not meet or medically equal a Listed impairment. [*Id.* at 14.] He finally argues that the ALJ did not appropriately consider Plaintiff's obesity, either on its own or in combination with his other impairments. [*Id.* at 15.]

### A. Weight of Treating Physicians' Opinions

An ALJ must giving a treating physician's opinion controlling weight if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)). If the ALJ finds that the opinion is not entitled to controlling weight, the ALJ must still assess the proper weight to give to the opinion. *See id.* This requires consideration of several factors, including the "length, nature, and extent of the physician and claimant's treatment relationship, whether the physician supported his or her opinions with sufficient explanations, and whether the physician specializes in the medical conditions at issue." *Id.* (citations omitted). Plaintiff in this case contends the ALJ ignored these requirements by erroneously discounting the opinions of four treating physicians: Dr. Kenneth Renkens; Dr. Roger Bailey; Dr. Andrew Wilson; and Dr. John Gonzalez. [Dkt. 16 at 10-12.]

### 1. Dr. Kenneth Renkens

In December 2010, Plaintiff was working as a printing press operator when he experienced back pain that required him to take a leave of absence from the position. [*See* R. at 317.] Approximately four months later, Plaintiff's employer referred Plaintiff to Dr. Kenneth Renkens for a neurosurgery consultation to determine if Plaintiff could return to work. [*Id.*] Dr. Renkens reviewed Plaintiff's medical records and noted that a 2010 MRI had revealed a degenerative disc in Plaintiff's spine. [R. at 317-18.] Dr. Renkens concluded that this disc was the source of Plaintiff's pain, but stated that "[t]o more accurately determine [Plaintiff's] ability to return to work," he would need to complete "a physical therapy Functional Capacity Evaluation [FCE], which would determine whether [Plaintiff] needed any restrictions." [R. at 318.] Plaintiff contends that he did not subsequently obtain an FCE because he could not afford

to pay for such an examination, [Dkt. 16 at 11], and Plaintiff now argues that the ALJ erred by failing to order an FCE "to clarify the record." [*See id.*]

Plaintiff's argument lacks merit: As an initial matter, Dr. Renkens is not a treating physician. The record indicates that Plaintiff was referred to Dr. Renkens for a single consultation, [R. at 317], such that Plaintiff did not have the sort of "ongoing" relationship that would establish Dr. Renkens as a treating source. *See* 20 C.F.R. § 404.1502 ("Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). Thus, even if the Court construed Dr. Renkens' comments about the FCE as an opinion that an FCE was necessary to determine Plaintiff's disability status, this opinion would not be entitled to "controlling" weight.

In addition, Plaintiff misconstrues the significance of Dr. Renkens' comments. Plaintiff saw Dr. Renkens only because Plaintiff's current employer requested a consultative examination to "determine if their employee, [Plaintiff], was fit to return to full work." [R. at 317.] At that time, Plaintiff had been working as "a printing press operator," and Dr. Renkens "reviewed the job description that was provided by [Plaintiff's] employer[.]" [*Id.*] This description, however, was apparently insufficient to conclusively determine whether Plaintiff could return to his former position. [*See* R. at 318 ("To more accurately determine his ability to return to work he would need [an FCE], which would determine whether he needed any restrictions.").]

Dr. Renkens' comments thus indicate than an FCE was necessary only to determine if Plaintiff could return to work **as a printing press operator**. The comments said nothing about whether an FCE was necessary to determine whether Plaintiff could work in **other** jobs. Thus, even if the FCE was required to clarify the narrow issue regarding Plaintiff's ability to perform

his specific, then-current occupation, the FCE was **not** necessarily required to determine whether Plaintiff could generally perform SGA. Moreover, the ALJ determined at step four of the sequential disability evaluation that Plaintiff could **not** work as a press operator. [R. at 28.] Thus, even if an FCE **had** been performed, and even if it **had** shown that Plaintiff could not work as a press operator, it is unclear how such an examination would have altered the ALJ's analysis. As a result, the ALJ's decision not to order an FCE did not affect the outcome of Plaintiff's claim, and this decision therefore does not require remand. *See, e.g.*, *Nicholson v. Astrue*, 341 F. App'x 248, 253 (7th Cir. 2009) ("An omission from the record is significant only if it is prejudicial to the claimant.").

Next, ALJs as a general matter have discretion in determining whether the record is sufficient to complete a disability analysis. *Poyck v. Astrue*, 414 F. App'x 859, 861 (7th Cir. 2011) ("This court gives deference to an ALJ's decision about how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal."); *see also Nicholson*, 341 F. App'x at 254 ("[T]he question before us is whether the ALJ's decision to rest on the record that he had was an abuse of discretion."). This is especially true where, as here, a claimant is represented by counsel when appearing before the ALJ. *Nicholson*, 341 F. App'x at 253 (quoting G*lenn v. Sec'y of Health and Human Servs.*, 814 F.2d 387, 391 (7th Cir.1987)) ("[T]he ALJ is entitled to assume that a claimant represented by counsel 'is making his strongest case for benefits[.]'").

In this case, the evidence before the ALJ contained records of both a physical consultative examination, [R. at 603-610], and a physical residual functional capacity analysis. [R. at 620-627.] The ALJ cited these records and found that they were entitled to "significant weight," [R. at 27], such that it was unnecessary to obtain additional evidence to clarify

Plaintiff's functional limitations. In addition, the ALJ asked Plaintiff's counsel if Plaintiff had further evidence to submit, and Plaintiff's counsel replied that he did not. [R. at 39.] In these circumstances, the ALJ reasonably believed that the record was sufficient to make a disability determination without obtaining an FCE or other evidence. The ALJ thus did not abuse his discretion in deciding to not collect additional evidence, and remand accordingly is not necessary. *See Nicholson*, 341 F. App'x at 254.

## 2. Dr. Roger Bailey

Plaintiff saw Dr. Roger Bailey in January and February of 2011. [R. at 242-46.] The ALJ did not refer to Dr. Bailey as a treating physician, [*see* R. at 24,] but the ALJ did note that, at the time of Dr. Bailey's examination, Plaintiff had a normal range of motion in his back; had intact sensation; and had normal strength. [R. at 242.] He also had a normal gait; normal reflexes; and a negative straight leg raise exam. [R. at 24, 242.]

In challenging the ALJ's decision, Plaintiff summarizes these findings and the ALJ's citation of them. [Dkt. 16 at 11.] He then notes that the ALJ did not explicitly "discuss Dr. Bailey's treatment relationship or his observations when assessing opinion evidence," [Dkt. 16 at 11], with the apparent implication that the ALJ violated the requirements of 20 C.F.R. § 404.1527 by not specifically discussing such factors.

Plaintiff's argument does nothing to advance his claim. First, it is Plaintiff who bears the burden to show that he is disabled, *see, e.g.*, *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984), and it is Plaintiff who must show that the ALJ committed a harmful error. *See, e.g.*, *Hicks v. Colvin*, No. 4:13-CV-00106-RLY, 2014 WL 3741352, at *3 (S.D. Ind. July 29, 2014) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)) ("[I]t is the Plaintiff's burden to show prejudicial error."). The pieces of evidence that Plaintiff cites, however, consist of findings that Plaintiff's

functioning and physical capacities were normal. [*See* Dkt. 16 at 11 (citing R. at 242) ("Plaintiff's range of motion was normal, his strength was 5/5, his gait and reflexes were normal, sensation intact, and straight leg was negative[.]").] Plaintiff cites no evidence that suggests the ALJ ignored anything in Dr. Bailey's report that was indicative of a disabling impairment, and Plaintiff has accordingly failed to meet his burden to show that a harmful error occurred.

Second, it is immaterial that the ALJ did not specifically discuss factors such as the length of Dr. Bailey's treatment relationship. Plaintiff himself describes Dr. Bailey as a "treating physician," and if the ALJ had accepted Plaintiff's characterization of Dr. Bailey, the ALJ would have given Dr. Bailey's opinion "controlling weight." *See* 20 C.F.R. § 404.1527(c)(2). As described above, however, Dr. Bailey's findings were primarily that Plaintiff's strength, sensation, range of motion, and other physical capacities were normal. [*See* R. at 242.] Thus, even if the ALJ **had** accepted Plaintiff's contention that Dr. Bailey was a "treating physician," [Dkt. 16 at 11], Dr. Bailey's findings would have **supported** the ALJ's ultimate conclusion that Plaintiff was not disabled. Again, then, Plaintiff has shown no harmful error in the ALJ's evaluation of Dr. Bailey's opinion, and the Court thus has no basis to remand this case for further consideration of this opinion.

### 3. Dr. Andrew Wilson

Plaintiff saw Dr. Andrew Wilson between October 2010 and July 2011. [R. at 328-338.] The ALJ discussed the records from these appointments and noted that Dr. Wilson found normal motor function and sensory function; normal muscle tone and strength; and normal reflexes. [R. at 24 (citing R. at 330).] The ALJ also noted that a lumbar X-ray showed "no evidence of instability on flexion and extension films," but that Dr. Wilson observed "decreased lumbar flexion range of motion." [*Id.* (citing R. at 330-31).] The ALJ did not specifically refer to Dr.

Wilson as a "treating" physician, and Plaintiff now contends that it was erroneous for the ALJ to not explicitly "discuss Dr. Wilson's observations, nor the nature, frequency or length of treatment when assigning weight to the opinion evidence." [Dkt. 16 at 11.]

As with Dr. Bailey's opinion, Plaintiff has failed to show that any error in the ALJ's analysis was prejudicial. The only abnormal finding or potentially disabling functional impairment that Plaintiff identified in Dr. Bailey's records was "decreased lumbar range of motion." [Dkt. 16 at 11.] In constructing Plaintiff's RFC, however, the ALJ gave "significant weight" to the opinions of Dr. M. Brill and Dr. Shuyan Wang, [R. at 27], both of whom noted Plaintiff's decreased lumbar range of motion. [R. at 606, 621.] Thus, even if the ALJ did not specifically discuss the "nature, frequency or length" of Dr. Wilson's treatment, the ALJ still incorporated the only potentially relevant functional limitation from Dr. Bailey's records. Giving more weight to Dr. Bailey's opinion thus would have changed nothing in the ALJ's analysis, and remand accordingly is not necessary to correct any error the ALJ may have made.

### 4. Dr. John Gonzalez[3]

Plaintiff saw Dr. John Winston Gonzalez for a psychiatric evaluation in February 2011. [R. at 682-84.] The ALJ discussed this appointment, [R. at 21, 26], but Plaintiff argues that the ALJ erred by not specifically "discuss[ing] Dr. [Gonzalez's] observations, nor the nature, length or frequency of the treatment relationship when discussing opinion evidence." [Dkt. 16 at 12.]

Plaintiff's argument suffers from several flaws. First, Plaintiff refers to Dr. Gonzalez as a "treating physician," but Dr. Gonzalez saw Plaintiff only for a single psychiatric evaluation. [*See* R. at 682-84.] Dr. Gonzalez therefore did not have the sort of "ongoing" relationship that would

---

[3] The ALJ and Plaintiff refer to Dr. Gonzalez as "Dr. Gangely." [*See, e.g.*, Dkt. 16 at 12.] As the Commissioner notes, [Dkt. 19 at 3 n.3], this error appears to result from the less than easily decipherable font that Dr. Gonzalez selected for his letterhead. [*See* R. at 683.]

establish him as a treating source. *See* 20 C.F.R. § 404.1502. Thus, despite Plaintiff's characterization of Dr. Gonzalez, the ALJ had no obligation to give Dr. Gonzalez' opinion controlling weight.

Next, even if the ALJ **had** given Dr. Gonzalez's opinion more weight, this change in the ALJ's analysis would not have affected the outcome of Plaintiff's claim. In discussing Dr. Gonzalez's examination, Plaintiff does not identify any evidence or findings that indicate functional impairment. Instead, Plaintiff writes only that Dr. Gonzalez "described Plaintiff's concentration, memory, insight, and judgment as good," found that Plaintiff had a "pleasant" mood, and observed that Plaintiff had "no signs of psychosis, nor suicidal or homicidal ideation." [Dkt. 16 at 12 (citing R. at 21, 26, 683-84).] If anything, then, Dr. Gonzalez's findings were indicative of normal mental functioning, such that affording more weight to his opinion would have strengthened the ALJ's conclusion that Plaintiff was not disabled. Any error in the ALJ's opinion thus worked to Plaintiff's advantage, and Plaintiff therefore suffered no harm that could be remedied on remand.

Finally, Plaintiff's contention that the ALJ erred by "not discuss[ing] Dr. [Gonzalez's] observations . . . when discussing opinion evidence," [Dkt. 16 at 12], is unfounded. The ALJ clearly **did** discuss Dr. Gonzalez's observations. [*See, e.g.*, R. at 21 ("John [Gonzalez] . . . noted the claimant was pleasant and cooperative[.]"); R. at 26 (John [Gonzalez], M.D. found the claimant had a GAF score of 50.")], and it is immaterial that the ALJ did not discuss these observations at the same time that he ultimately weighed the opinion evidence in the record. *See, e.g.*, *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]"). The ALJ was thus under no obligation to repeat his discussion of

Dr. Gonzalez's opinion, and Plaintiff's argument on this point is no basis for reversal of the ALJ's decision.

### 5. Other Physicians' Opinions

The ALJ gave "significant weight" to the opinions of State agency reviewing physicians Dr. M. Brill, Dr. M. Ruiz, Dr. Joseph Pressner, and Dr. Ann Lovko. [R. at 27.] Plaintiff contends this decision was erroneous because "the opinions of non-examining sources should never be given greater weight than the opinions of treating sources." [Dkt. 16 at 10.]

Plaintiff's contention is incorrect. A treating physician's opinion is entitled to controlling weight only if it is both "(1) supported by medical findings; and (2) consistent with substantial evidence in the record." *Elder*, 529 F.3d at 415 (7th Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)); *see also* SSR 96-2p ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record."). If the treating opinion is not entitled to controlling weight, the ALJ must then consider the weight to be given to the opinion in accordance with the list of factors used to evaluate all medical opinions. *See* 20 C.F.R. § 404.1527(c). These factors include the nature and length of the relationship between the claimant and the source; the supportability and consistency of the opinion; the specialization of the source; and any other relevant factors. *See id.* Thus, depending on how these factors apply to a given case, an opinion from a non-examining source may in fact be entitled to more weight than an opinion from a treating source. *See, e.g.*, *Polchow v. Astrue*, No. 10 CV 6525, 2011 WL 1900065, at *13 (N.D. Ill. May 19, 2011) (citing *Hofslien v. Barnhart*, 439 F.3d 375, 376-77 (7th Cir. 2006)) ("[T]he ALJ's decision

to afford greater weight to the opinions of nonexamining physicians—as opposed to those of the treating psychologist—was supported by substantial evidence[.]").

Here, the ALJ noted that the opinions to which he afforded "significant weight" came from doctors with "program expertise" in the field of social security disability determination, [R. at 27], and were "supported by a majority of the objective medical evidence" that the ALJ had previously discussed. [*Id.*] The ALJ thus addressed factors such as the specialization of the sources and the supportability of the opinion,[4] such that he did not necessarily err in giving more weight to non-examining sources than treating sources. To be sure, the ALJ's discussion of the factors in 20 C.F.R. § 404.1527(c) could have been more explicit and more thorough, but any argument on this point is irrelevant to Plaintiff's claim: As described above, Plaintiff failed to identify **any** findings in **any** of the above-described opinions that would have affected the ALJ's analysis even if those opinions **had** been given more weight. Plaintiff thus failed to carry his burden to establish that any error was prejudicial, such that the ALJ's analysis of these opinions does not require remand.

Plaintiff next contends that the ALJ erroneously evaluated the opinions of Dr. Steven Marlow and Dr. Bridgett Roberts-Pittman. [Dkt. 16 at 13; *see also* Dkt. 20 at 2.] The first doctor assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 48, indicating the possibility of "serious" limitations in social or occupational settings. [R. at 26.] Four months later, the second doctor assigned a GAF score of 55, indicating the possibility of "moderate" limitations in social or occupational settings. [*Id.*] The ALJ then noted that GAF scores are

---

[4] Plaintiff did not specifically argue that the ALJ should have discussed all factors specified in 20 C.F.R. § 404.1527(c), but to the extent Plaintiff asks the Court to impose such a requirement, this request is unwarranted. *See, e.g.*, *Greathouse v. Colvin*, No. 1:14-CV-00805-JMS-DKL, 2015 WL 506276, at *7 (S.D. Ind. Feb. 6, 2015) ("The Seventh Circuit has made clear that an ALJ need not explicitly weigh every relevant factor to conclude that a treating physician's opinion should be discounted[.]"); *Harrison v. Colvin*, No. 3:12-CV-87-RLY-WGH, 2013 WL 5487430, at *3 (S.D. Ind. Sept. 30, 2013) ("Plaintiff has not referenced any regulations or case law which requires the ALJ to discuss all of these factors in weighing each medical opinion.").

"snapshot[s] of the claimant's ability to function at the particular time of the assessment," such that they cannot be afforded "significant weight" with respect to a claimant's overall level of functioning. [*Id.*] Plaintiff now contends that this conclusion was erroneous because the scores of 48 and 55 "showed only a 7 point difference in terms of impairment rating, indicating at least some consistency" over time. [Dkt. 16 at 13.]

This argument is unpersuasive: The Seventh Circuit has explicitly noted that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score," *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), and the ALJ was thus justified in determining that Plaintiff's GAF scores were "not dispositive." [R. at 26.]

Further, Plaintiff misunderstands the significance of the GAF scale. This scale measures both a patient's symptoms and the functional effects of those symptoms. *Denton*, 596 F.3d at 425. A physician, however, always assigns a score that represents the worse of the two ratings. *Id.* Thus, a patient's low GAF score may be indicative only of the patient's symptoms, without any indication of whether those symptoms actually affect the patient's functional capacity. *See id.* As a result, the score has limited value in determining whether a patient can engage in SGA, and so even if Plaintiff's scores in this case **were** consistent, they were not necessarily evidence that Plaintiff was functionally limited. Indeed, Plaintiff himself notes that, despite assigning relatively low GAF scores, Dr. Marlow and Dr. Roberts-Pittman observed that Plaintiff had "intact . . . memory," "normal attention and concentration," and "no behavior, motor activity or speech abnormalities." [Dkt. 16 at 13.] These doctors' opinions thus indicate that—regardless of any GAF scores—Plaintiff did not have **functional** limitations, and the ALJ therefore did not err in declining to afford more weight to Plaintiff's scores.

Plaintiff finally makes a brief argument that the ALJ erred by failing to explicitly "weigh" the evidence 1) from Dr. Roberts-Pittman's examination and 2) from a 2011 evaluation from a Veterans Administration ("VA") hospital. [Dkt. 16 at 13.] The ALJ, however, discussed both these evaluations, [*see* R. at 26], and Plaintiff does not explain what additional evidence the ALJ should have "weighed" or how his alleged decision not to do so prejudiced Plaintiff's claim. [*See* Dkt. 16 at 13.] That failure alone is sufficient to reject Plaintiff's argument. *See Hicks*, 2014 WL 3741352, at *3 ("[I]t is the Plaintiff's burden to show prejudicial error."); *see also Haggard v. Colvin*, No. 1:12-CV-1263-SEB-TAB, 2013 WL 6388365, at *2 (S.D. Ind. Dec. 5, 2013) (citing *United States v. Elst*, 579 F.3d 740, 743 (7th Cir.2009)) (perfunctory and undeveloped arguments are waived).

Further, to the extent Plaintiff's argument is that the ALJ should have attached a specific designation—such as "some weight," "great weight," or "no weight"—to each of the medical opinions in the record, this argument misstates the ALJ's duty. The ALJ must consider each opinion, *see* 20 C.F.R. § 404.1527, but as long as the Court can follow the ALJ's reasoning, a specific "weight" is not necessary. *See, e.g.*, *Ehrecke v. Colvin*, No. 4:13CV4027, 2014 WL 2178154, at *3 (C.D. Ill. May 23, 2014) ("Although it is true that the ALJ did not explicitly assign weights to the remaining medical opinions on [plaintiff's] GAF, he did not need to do so."); *see also id.* at * 4 (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)) ("To be sure, the ALJ could have been more explicit about assigning weight to the opinions he did not explicitly reject, but he did so sufficiently to allow the 'court to trace the path of his reasoning.'"). Here, the ALJ discussed each opinion in the record, [R. at 22-28], assigned "significant weight" to certain opinions, [R. at 27], and explained why he gave those opinions such weight. [*Id.*] The Court can thus trace the path of the ALJ's reasoning from the evidence to

his conclusion, and his failure to explicitly "weigh" certain opinions therefore does not require remand.

**B. Step Three Equivalence Determination**

At step three of the sequential evaluation, the ALJ considered and rejected Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine), Listing 12.04 (affective disorders), and Listing 12.06 (anxiety-related disorders). [R. at 19-22.] Plaintiff now challenges the ALJ's conclusion. [Dkt. 16 at 14.] To prevail, Plaintiff "has the burden of showing that his impairments meet a listing, and he must show that his impairments satisfy all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

Despite this burden, Plaintiff does not even specify which Listing his impairments allegedly met or equaled, [*see* Dkt. 16 at 14-15], nor does Plaintiff cite "the various criteria" specified in any Listing. [*See id.*] Instead, Plaintiff recites a list of clinical findings related to his arm and back. [*See id.*] The Court thus construes Plaintiff's argument as a claim that his impairments met or medically equaled Listing 1.02 or Listing 1.04. However, as an initial matter, the Court finds that Plaintiff's entirely undeveloped arguments in this regard are deemed waived. *See Haggard*, 2013 WL 6388365, at *2.

**1. Listing 1.02**

Listing 1.02 is subdivided into Listings 1.02A and 1.02B. These Listings require, *inter alia*, that a claimant suffer from a major dysfunction of a joint that is accompanied by either "inability to ambulate effectively" (Listing 1.02A) or "[i]nvolvement of one major peripheral joint in each upper extremity . . . resulting in inability to perform fine and gross movements effectively" (Listing 1.02B). 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Here, Plaintiff has cited no evidence indicating difficulty in ambulating, and indeed, the earlier-described reports from

Plaintiff's "treating" physicians indicate that Plaintiff had no such difficulty. [*See, e.g.*, R a 242 ("Gait [within normal limits]"); R. at 317 ("Coordination and Gait: Normal"); R. at 330 ("Gait and station . . . without abnormalities").] In addition, the SSA's regulations define "inability to ambulate effectively" as an "extreme" limitation that precludes "ambulation without the use of a hand-held assistive device[.]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff has pointed to no evidence that he required such a "hand-held assistive device," [*see* Dkt. 16 at 14-15], and Plaintiff has thus failed to show that he satisfied all criteria of Listing 1.02A.

Next, the SSA defines "inability to perform fine and gross movements" as an "extreme" limitation that is so severe that a claimant cannot "prepare a simple meal," "feed [him]self," "take care of personal hygiene," or "sort and handle papers or files." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Plaintiff's own functional reports in this case indicate that he could attend to such activities, [R. at 207-08], and his own statements thus undermine any claim that his impairments met or equaled Listing 1.02B. Further, although Plaintiff notes that he had "right carpal tunnel syndrome as evidenced by EMGs," [Dkt. 16 at 15], Listing 1.02 requires an inability to perform fine and gross movements in "each" upper extremity. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Thus, even if Plaintiff's carpal tunnel syndrome had resulted in an "extreme" limitation in Plaintiff's right hand, that finding alone would be insufficient to establish that Plaintiff's impairments satisfied Listing 1.02B.

## 2. Listing 1.04

Listing 1.04 is subdivided into Listing 1.04A, Listing 1.04B, and Listing 1.04C. These Listings respectively require, *inter alia*, a disorder of the spine such as degenerative disc disease or spinal stenosis that is accompanied by 1) muscle atrophy and sensory or reflex loss; 2) severe burning or painful dysesthesia; or 3) inability to ambulate effectively. 20 C.F.R. § Pt. 404, Subpt.

P, App. 1. Here, the ALJ found that Plaintiff did have degenerative disc disease, [R. at 18], but Plaintiff has pointed to no evidence establishing that any of the remaining above-listed criteria were satisfied. First, the records from Plaintiff's physicians indicate that Plaintiff did not suffer from muscle atrophy, sensory loss, or reflex loss. [*See, e.g.*, R. at 317 ("Sensation to Pin: Normal, Reflexes: Normal"); R. at 330 ("Muscle strength is 5/5 for all groups tested. Muscle volume is normal. Muscle tone is normal. Neurologic exam of the lower extremities is normal with respect to motor, sensory, and deep tendon reflexes."); R. at 607 ("There is no evidence for muscle atrophy.").] Second, Plaintiff cites no evidence indicating any "severe burning" sensation or "painful dysesthesia." [*See* Dkt. 16 at 14-15.] Finally, Plaintiff did not—as described above— suffer from an inability to ambulate effectively. As a result, Plaintiff failed to show that he satisfied "all of the various criteria specified in [Listing 1.04]," *Ribaudo*, 458 F.3d at 583, and Plaintiff's argument on this issue is equally unavailing.

Plaintiff attempts to salvage his step-three argument by noting that the Veterans Administration ("VA") at times evaluated Plaintiff and provided "opinions of 100% disability." [Dkt. 16 at 14-15.] As the ALJ noted, however, the VA "uses a different standard to determine disability" than does the SSA. [R. at 25.] In particular, "the Department of Veterans Affairs requires less proof of disability than the Social Security Administration does," and so a VA finding of disability "do[es] not bind the Social Security Administration." *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2006). This does not mean that the ALJ can ignore such evidence; rather, an ALJ should typically give "some weight" to the VA's evaluations. *See id.* Here, however, the ALJ discussed both the objective tests that the VA performed and the conclusions that the VA's doctors reached. [R. at 25.] The ALJ thus plainly considered the VA evidence, and he did not err in deciding that this evidence did not establish that Plaintiff was disabled.

In reply, Plaintiff argues that the ALJ should have more extensively considered whether his impairments "equaled a disability through a *combination* of the combined effects of Listings 1.02, 1.04 and 12.04/12.06." [Dkt. 20 at 2 (emphasis original); *see also id.* at 3 ("Plaintiff requests that this Court remand and reverse the ALJ's order and determine that Plaintiff's conditions meet or equal a combination of Listings 1.02, 1.04, 12.04 and 12.06[.]").] This argument appears to misconstrue the step three analysis: At step three, the ALJ determines whether the claimant's **impairment** or combination of **impairments** meets or medically equals a Listing. *See* 20 C.F.R. § 404.1520(d). The claimant cannot pick and choose various criteria from multiple Listings and argue that he satisfies a combination of **Listings**; rather, as noted above, the claimant must satisfy "**all** of the various criteria specified in **the** listing." *Ribaudo*, 458 F.3d at 583 (emphasis added). Thus, even if Plaintiff's impairments satisfied **some** of the criteria from **multiple** listings, this analysis does not establish that any error occurred at step three.

**C.  Effects of Plaintiff's Obesity**

Plaintiff's final argument is that the ALJ erred by failing to "consider the combined effect of obesity with other impairments" and by failing to determine whether Plaintiff's obesity "either on its own or in combination . . . met or equaled a Listing." [Dkt. 16 at 15.] Plaintiff specifically cites Social Security Ruling 02-1p, which states that ALJs will consider a claimant's obesity at steps two through five of the sequential evaluation process. *See* SSR 02-1p. At step three, for example, the SSA will "find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing," and in constructing the claimant's RFC, an ALJ will "consider any functional limitations resulting from the obesity." *Id.*

In this case, Plaintiff claims that the ALJ "merely describe[d]" Plaintiff's obesity without actually accounting for any functional limitations. [Dkt. 16 at 15.] The ALJ, however, expressly noted that obesity may aggravate a claimant's musculoskeletal limitations and "may have an adverse impact upon co-existing impairments". [R. at 20 (citing SSR 02-1p).] Admittedly, the ALJ did not identify any of Plaintiff's specific impairments that were aggravated by obesity, but the ALJ did state that the effects of Plaintiff's obesity were "taken into account . . . at the 2nd through 5th steps of the sequential disability evaluation process," [*id.*], and if the ALJ's analysis was not especially specific, this was likely because—as the ALJ noted—"no treating or examining medical source . . . specifically attributed additional or cumulative limitations to the claimant's obesity." [*Id.*]

In addition, the Seventh Circuit has observed that an ALJ need not explicitly discuss a claimant's obesity. *See, e.g.*, *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) ("[T]he ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). Here, Dr. Shuyan Wang was aware of Plaintiff's obesity, [*see* R. at 605 (noting BMI of 31)], and Dr. Wang commented at length on Plaintiff's musculoskeletal limitations. [R. at 606-07.] The ALJ then gave Dr. Wang's opinion "significant weight" in constructing Plaintiff's RFC. [R. at 27.] Thus, just as in *Skarbek*, the ALJ in this case indirectly incorporated the limitations imposed by Plaintiff's obesity, and any failure to explicitly discuss the effect of Plaintiff's obesity does not warrant remand.

Finally, it is "the party that seeks to have a judgment set aside [that] carries the burden of showing that prejudice resulted." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citation and internal quotation marks omitted); *see also Bowling v. Comm'r of Soc. Sec.*, No. 09-CV-00415 DRH, 2011 WL 1232605, at *6 (S.D. Ill. Mar. 30, 2011) ("[T]he party seeking to overturn an agency's administrative decision bears the burden of showing that an error was harmful."). Here, however, Plaintiff cites no evidence suggesting that his obesity affected his ability to function. [*See* Dkt. 16 at 15-16.] The closest Plaintiff comes to identifying any specific error is in arguing that Dr. Renkens' proposed FCE "might have gone a long way" in determining the effect of Plaintiff's obesity. [*Id.*] As explained above, however, Dr. Renkens suggested that the FCE was necessary only to evaluate whether Plaintiff could perform his past occupation as a press operator. Because the ALJ concluded—even without the FCE—that Plaintiff could not perform the duties of that occupation, [R. at 28], it is difficult to see how the FCE could have affected the ALJ's analysis of this issue. As such, Plaintiff has failed to explain how he was prejudiced by any error that may have occurred, and remand accordingly is unnecessary. *See Shinseki*, 556 U.S. at 409 (2009); *accord, e.g.*, *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008) (upholding ALJ's decision where "[Plaintiff] did not articulate how her obesity exacerbated her underlying conditions and further limited her functioning").

## Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision that William Kirby, Jr., is not entitled to Disability Insurance Benefits or Supplemental Security Income. The Magistrate Judge therefore recommends that the Commissioner's decision

be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date:  05/28/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Thomas C. Newlin
FLESCHNER STARK TANOOS & NEWLIN
tom@fleschnerlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov